UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTEZ MAXWELL,

               Petitioner,

                                    CASE NO. 2:20-CV-11141
v.                                  HON. NANCY G. EDMUNDS

SHERMAN CAMPBELL,

               Respondent.[1]

_____/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF**
**HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,**
**& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

       This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan

prisoner Montez Maxwell ("Petitioner") was convicted of first-degree premeditated murder,

Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a

felony, Mich. Comp. Laws § 750.227b, following a joint trial before separate juries with co-

defendant Victoria Lynn Solomon in the Wayne County Circuit Court.  He was sentenced

to consecutive terms of life imprisonment without the possibility of parole and two years

imprisonment on those convictions in 2017.  In his pleadings, Petitioner raises claims

concerning the sufficiency of the evidence and the trial court's refusal to admit certain

evidence.  For the reasons set forth herein, the Court denies the habeas petition.  The

---

     [1]Petitioner is currently confined at the Gus Harrison Correctional Facility in
Adrian, Michigan.  Consequently, the proper respondent in this case is the warden at
that facility who has custody of Petitioner.  Accordingly, the Court hereby amends the
caption to name Sherman Campbell as the respondent in this case.

Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting death of Tyrone Delaney in Wayne County, Michigan during the early morning hours on June 22, 2016.  The Michigan Court of Appeals described the underlying facts, which are presumed correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> Delaney fathered three of Solomon's children. Testimony at trial explained that Solomon and Delaney had an off-and-on relationship over a period of several years. The relationship was abusive, and Delaney had received two misdemeanor convictions, in 2009 and 2010, for assaulting Solomon. Nonetheless, testimony presented at trial indicated that Solomon frequently took all six of her children to the home of Kalua Hudson, who is Delaney's mother, to feed and bathe them. Solomon was comfortable leaving her children with Hudson and her family. A few days before the murder, Solomon had brought Delaney's children to visit with him at Hudson's home. For reasons discussed in more detail later in this opinion, Delaney had been absent for some time, and had recently begun living at Hudson's home at the time of his death.
>
> In the afternoon of June 21, 2016, one of Delaney's sisters, Tanysha Black (Tanysha), picked up Solomon and her children. Plans had been made for Delaney to have his two youngest children, approximately 1-year-old twins, stay overnight at Hudson's home. When Tanysha brought Solomon to Hudson's home, there was no animosity; in fact, Solomon, Delaney, and others sat together for about half an hour before Tanysha drove Solomon and her other children to a restaurant. But while Solomon was at Hudson's home, she asked Tanysha to retrieve Solomon's purse. Solomon explained that she had a handgun in her purse, and did not want the children to find it. Solomon did not explain why she had the gun with her. Tanysha retrieved the purse and saw the gun, which she described as a black and chrome .38 caliber handgun.
>
> During the evening and into the night, Solomon and Delaney argued via telephone and text message. It appears that the primary issue was Delaney's complaint that Solomon did not provide enough diapers for the children when

2

she dropped them off with him. Eventually, Solomon grew frustrated and demanded that her children be returned to her. Delaney refused, explaining that it was too late at night for Solomon to get the children, who were asleep. Solomon was not satisfied, and began calling friends and family members, looking for someone to drive her to Hudson's home. During these calls, Solomon began threatening to kill Delaney if he did not return the children.

At the time, Solomon was dating and living with Maxwell. Using information regarding what towers their respective cellular telephones were interacting with during the relevant timeframe, it appears that Solomon and Maxwell traveled to Hudson's home between 1:00 a.m. and 1:30 a.m. on June 22, 2016. Tameka Black (Tameka), another of Delaney's siblings, was at Hudson's home because Delaney had asked her to bring diapers. Tameka explained that she saw Delaney walk out of the home and head in an unexpected direction. This drew Tameka outside, who saw that Solomon was standing outside the home.

Delaney and Solomon had a verbal argument over the children. During this argument, Solomon spat on Delaney, and Delaney slapped Solomon. Hudson was called outside, and was seemingly able to calm the situation to some extent. But as Delaney was beginning to walk away, Solomon made a threat, stating, "I'm going to get somebody to shoot you." Solomon took her cellular telephone out and said something that went unheard by the witnesses. However, Delaney responded by stating, "Oh, b****, you're still throwing threats at me." He approached Solomon and slapped her a second time. Hudson again intervened, however, telling Delaney to stop, which he did.

According to Tameka, Solomon then began backing away from Delaney, seemingly leading him toward the nearby intersection. Delaney followed Solomon. Solomon suddenly looked to her right, and at that point, Maxwell emerged from behind a group of bushes. He was dressed all in black, and had a gun drawn. He ran toward Delaney, reached around Hudson, and fired. Delaney pushed Hudson away and tried to retreat, but tripped and fell while running. Maxwell then continued firing bullets into Delaney, who was on the ground, while Hudson stood by, imploring Maxwell to stop. Solomon stood by and did not intervene. Delaney died at the scene. An autopsy found nine bullets inside his body, and wounds to his face, neck, shoulder, arm, chest, back, hand, and foot. A gun matching the description of the one seen earlier in Solomon's purse was found discarded at the scene of the murder. The gun had no live rounds of ammunition left.

Solomon was arrested at the scene. Maxwell fled, but turned himself into police later that day, and admitted to shooting Delaney. Maxwell claimed that he shot Delaney because Delaney was fighting with Solomon, and Maxwell

was aware that Delaney had "beat her into a coma before."3 Maxwell also stated that there were "a bunch of other people there and they started fighting with me too. I got a gun and shot [Delaney]. I was scared and took off running." Maxwell explained that he left the gun he used at the scene.

*People v. Maxwell*, No. 337905, 2018 WL 6184913, *1-2 (Mich. Ct. App. Nov. 27, 2018) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions. *Id*. at pp. 2-6. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Maxwell*, 503 Mich. 1020, 925 N.W.2d 878 (2019).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.    There was insufficient evidence to convict him of first-degree premeditated murder and felony firearm because he acted in lawful self-defense of another.

II.   The trial court violated his due process rights by refusing to allow defense counsel to cross-examine (i.e. admit evidence) about Tyrone Delaney just getting out of prison.

Respondent filed an answer to the habeas petition contending that it should be denied because the second claim is procedurally defaulted in part and both claims lack merit.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

4

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and

'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. It also "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of a state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only

7

with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir.

1998).  Moreover, habeas review is "limited to the record that was before the state court."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.     Analysis

### A.     Procedural Default

As an initial matter, Respondent contends that part of Petitioner's second habeas

claim is barred by procedural default.  The Court declines to address this defense.

Procedural default is not a jurisdictional bar to habeas review.  *See Howard v. Bouchard*,

405 F.3d 459, 476 (6th Cir. 2005).  Moreover, federal courts on habeas review "are not

required to address a procedural-default issue before deciding against the petitioner on

the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v.

Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale

behind such a policy:  "Judicial economy might counsel giving the [other] question priority,

for example, if it were easily resolvable against the habeas petitioner, whereas the

procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.

Such is the case here.  The procedural issue is complex and the substantive claims are

more readily decided on the merits.  Accordingly, the Court shall proceed to the merits of

the claims.

### B.     Merits

#### 1.     Sufficiency of the Evidence (Habeas Claim I)

Petitioner first asserts that he is entitled to habeas relief because the prosecutor

failed to present sufficient evidence to support his convictions.  In particular, he alleges

that the prosecutor failed to establish that he acted with premeditation and deliberation as opposed to acting in the defense of Victoria Lynn Solomon.  Respondent contends that this claim lacks merit.

The Federal Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam).  "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422,

9

434 (1983)).  The "mere existence of sufficient evidence to convict ... defeats a petitioner's claim."  *Id.* at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate.  *People v. Taylor*, 275 Mich App 177, 179; 737 N.W.2d 790 (2007); *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); MICH. COMP. LAWS § 750.316; *see also Scott v. Elo*, 302 F.2d 598, 602 (6th Cir. 2002).  Premeditation and deliberation may be established by evidence of:  "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide."  *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004).  While there is no minimum time required to show premeditation under Michigan law, the time between initial thought and ultimate action should be long enough for a reasonable person to take a "second look" at the situation.  *People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999).  "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation."  *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003).

The elements of felony firearm are:  (1) the defendant possessed a firearm, (2) during the commission of, or an attempt to commit, a felony offense.  *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (quoting *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); Mich. Comp. Laws § 750.227b.

The prosecution must prove every element of a charged offense beyond a

reasonable doubt.  This burden includes proving that the defendant is the person who committed the crime.  *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753 (2008).  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Nowack*, 462 Mich. 392, 399-400, 614 N.W.2d 78 (2000); *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); including identity, *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002, and intent or state of mind.  *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also Nowack*, 462 Mich. at 402-03.

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Jackson* standard and pertinent state law principles, and denied relief.   The court explained in relevant part:

> There is no dispute that Maxwell killed Delaney, and thus, the only question is whether sufficient evidence of premeditation and deliberation exists. Taking the evidence in a light most favorable to the prosecutor, the direct and circumstantial evidence demonstrates that Solomon was angry with Delaney and was determined to take her children back from him, despite the time of day, and despite the fact that the children were very young and asleep. She told others that she would either get her children back or kill Delaney. Cellular telephone records showed that Solomon and Maxwell were together, traveling to Delaney's home, in the early hours of the morning.
>
> Solomon then initiated a verbal and physical confrontation with Delaney. While Delaney responded by assaulting Solomon, the evidence indicated that he was not armed,4 and that he only shoved and slapped Solomon. The shooting did not immediately follow this physical assault. Rather, Solomon stated that she was going to have someone kill Delaney. She then spoke to someone using her cellular telephone—presumably Maxwell. She then backed Delaney toward the area where Maxwell was located. Maxwell emerged from a concealed location, weapon drawn, and began firing. In an attempt to escape, Delaney fell to the ground, where Maxwell shot him multiple times, using every bullet in his weapon. On this record, a rational

juror could easily conclude that Solomon and Maxwell agreed to travel to Hudson's home and attempt to retrieve the children. If Delaney would not give the children to Solomon, Maxwell would shoot and kill Delaney, as Solomon had threatened earlier that evening. As such, there is clearly evidence sufficient to support premeditation and deliberation by Maxwell before he shot and killed Delaney.

A person may use deadly force if necessary to prevent being killed or suffering serious bodily harm if they have an honest and reasonable belief that they are in imminent danger of being killed or seriously harmed. *People v. Dupree*, 486 Mich. 693, 707; 788 N.W.2d 399 (2010).

"Once a defendant raises the issue of self-defense [or defense of others] and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense [or defense of others] exists, the prosecution must exclude the possibility of self-defense [or defense of others] beyond a reasonable doubt." *People v. Stevens*, 306 Mich. App. 620, 630; 858 N.W.2d 98 (2014) (quotation marks and citations omitted).

There was ample evidence submitted at trial to disprove Maxwell's claim of defense of others. While there was a past history of violence between Solomon and Delaney, the testimony showed that Solomon voluntarily took the children to visit with Delaney at his home the day before the shooting, without any incident. There was ample evidence showing that Solomon was not fearful of Delaney at all. Further, at the moment of the shooting, Solomon was not in any imminent danger. Rather, she was backing away from Delaney, seemingly leading him to his death. After Maxwell emerged from the bushes, Delaney tried to run away, only to fall to the ground after tripping. Maxwell then shot Delaney multiple times as he lay on the ground. When Maxwell killed Delaney, any possible threat to Solomon or anyone else was nonexistent. There was more than sufficient evidence to prove that the killing was not the result of any reasonable fear of imminent death or injury to Solomon.

*Maxwell*, 2018 WL 6184913 at *3-4 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner admits that he shot and killed the victim with a gun, but asserts that he did not act with premeditation and deliberation so as to support his convictions. The prosecution, however, presented ample

evidence to show that Petitioner acted with premeditation and deliberation and had time to take a second look before shooting and killing the victim. Such evidence includes testimony that Solomon was upset with the victim and threatened to kill him (and enlist someone to help her) before the shooting, that Petitioner was armed and traveled with Solomon to the victim's residence, that Petitioner hid on the side of the victim's residence until Solomon called him, that Petitioner emerged from his concealed location and shot the unarmed victim multiple times (including twice in the back) while the victim was backing away from Solomon and after he had fallen to ground, and that Petitioner fled the scene after the shooting. Such testimony, if believed, established beyond a reasonable doubt that Petitioner acted with the requisite intent to support his convictions.

Petitioner relatedly asserts that the prosecution failed to present sufficient evidence to disprove his defense of others claim. Under Michigan law, the prosecutor must disprove a claim of self-defense or defense of others. *See People v. Jackson*, 390 Mich. 621, 626, 212 N.W.2d 918 (1973) (citing *People v. Stallworth*, 364 Mich. 528, 535, 111 N.W.2d 742 (1961). But "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).

Self-defense or defense of others is an affirmative defense under Michigan law. *People v. Dupree*, 486 Mich. 693, 704, 712, 788 N.W. 2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155 n. 76, 815 N.W.2d 85 (2012) (quoting *Dupree*, 486 Mich. at 704, n. 11). The Supreme Court and the Sixth Circuit have both rejected the contention that the Constitution requires

the prosecution to disprove self-defense or defense of others beyond a reasonable doubt. *See Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of insufficient evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982)). Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue. *See, e.g., Zale v. Skipper*, No. 18-13814, 2021 WL 2413330, *4 (E.D. Mich. June 14, 2021) (citing cases and denying habeas relief on similar claim); *Holley v. Balcarcel*, No. 17-13370, 2020 WL 6393837, *4 (E.D. Mich. Nov. 2, 2020) (discussing the foregoing case law and denying habeas relief on similar claim).

Nonetheless, even if such a claim is cognizable, Petitioner is not entitled to habeas relief.  The Michigan Court of Appeals reasonably concluded that the prosecution presented sufficient evidence to negate Petitioner's defense of others claim.  In particular, the previously-discussed evidence of premeditation and deliberation, as well as the testimony that the victim was unarmed, that the victim merely slapped and shoved Solomon during the altercation, and that the victim was backing away from Solomon when Petitioner shot him multiple times, provided ample evidence to show that Petitioner was not acting in self-defense or defense of Solomon when he shot and killed the victim.

Petitioner challenges the jury's evaluation of the testimony at trial and the inferences the jury drew from the evidence.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *Jackson*, 443 U.S. at 326;

14

*Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.  The evidence presented at trial, viewed in a light favorable to the prosecution, established Petitioner's guilt of first-degree premeditated murder and felony firearm beyond a reasonable doubt.  Habeas relief is not warranted on this claim.

### 2.    Exclusion of Evidence (Habeas Claim II)

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in excluding evidence of the victim's incarceration and recent release from prison in violation of his rights to due process and to present a defense.  Respondent contends that this claim is not cognizable, procedurally defaulted in part, and lacks merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).  "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871

(6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The right of an accused to present a defense has long been recognized as "fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Holmes v. South Carolina*, 547 U.S. 319, 329-31 (2006); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  A defendant's right to present a defense is not unlimited, however, and may be subject to "reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  For example, a defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissable under standard rules of evidence."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Holmes*, 547 U.S. at 326 (recognizing that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury").  In such cases, the question is not whether the jury would reach a different result, but whether the defendant was afforded "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *Chambers*, 410 U.S. at 302.

The Michigan Court of Appeals considered this claim on direct appeal and denied relief.  The court explained in relevant part:

> Perhaps the most basic rule of evidence is that "[e]vidence which is not relevant is not admissible." MRE 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Maxwell notes that the trial court allowed evidence of the history of violence between Delaney and Solomon to be admitted. But Maxwell contends that he should

16

also have been allowed to admit evidence of Delaney's recent release from prison because this evidence would have explained why Solomon feared the children being with Delaney for a lengthy period. According to Maxwell, the jury was left with the impression that Solomon was acting unreasonably in seeking the return of her children. He posits that the evidence would have "placed in proper context Solomon's actions in going to get the children and the help she needed from Mr. Maxwell." Maxwell goes on to explain that the prosecutor painted the situation as a revenge killing, and that this was a false narrative; Maxwell believes evidence that Delaney was on parole would have allowed the jury to view the killing as a spur-of-the-moment reaction by Maxwell after seeing Solomon being assaulted.

We fail to see the connections made by Maxwell. Maxwell never explains how the evidence would have shown that Solomon feared her children being with Delaney. The convictions for which Delaney was incarcerated and paroled do not appear to have any connection to Solomon. Precisely how these convictions and the penalties imposed on Delaney would show why Solomon feared Delaney is not at all clear. But beside that missing link, there was no evidence that Solomon actually did fear leaving her children with Delaney. Rather, the record was clear that Solomon voluntarily brought the children to Delaney's home for a visit, as she had a few days before. In the end, Maxwell's argument seems to be that he should have been allowed to present evidence that he believes demonstrates why Solomon was afraid of her children being with Delaney. Yet the record shows that no such fear existed in the first instance. Rather, the record demonstrated that Solomon was, at least until the two began to argue late in the evening of June 21, 2016, entirely comfortable with leaving her children with Delaney.

And in any event, precisely why Solomon wanted her children back was not particularly relevant to Maxwell's case. Rather, given that Maxwell had admitted to shooting and killing Delaney, the relevant questions pertained to his state of mind at the time of the shooting. The jury had to determine whether the shooting was premeditated, or merely intentional, and further, whether Maxwell was acting in self-defense or in defense of others. In his closing argument, Maxwell's counsel largely argued that Maxwell killed Delaney because Solomon was afraid that Delaney was planning to take the children out of state. Counsel contended that this was sufficient to show that Maxwell was acting in defense of others. It is difficult to understand how Delaney's imprisonment and parole status would have been of much relevance to the argument. But in any event, the argument itself was entirely irrelevant to the case. In order to use deadly force in defense of another, one must have an honest and reasonable belief that deadly force is necessary "to prevent the imminent death of or imminent great bodily harm to" the other individual. MCL 780.972(1)(a). Maxwell's argument had no bearing on what was required to avoid a conviction, as it failed to

demonstrate any fear of imminent death or great bodily harm.

A portion of Maxwell's argument might be read as indicating that the evidence of Delaney's prison and parole status may have shown his aggressive nature, which would, in turn, be relevant to determining whether Maxwell would have been justified in believing that Solomon was at risk of death or great bodily harm. *See People v. Harris*, 458 Mich. 310, 316-317; 583 N.W.2d 680 (1998) ("[W]here a defendant charged with murder asserts that he killed in self-defense, his state of mind at the time of the act is material because it is an important element in determining his justification for his belief in an impending attack by the deceased."). As this Court explained in *People v. Orlewicz*, 293 Mich. App. 96, 104; 809 N.W.2d 194 (2011), *remanded in part on other grounds* 493 Mich. 916 (2012):

> Evidence concerning the aggressive character of a homicide victim, even if the defendant was unaware of it at the time, is admissible in furtherance of a self-defense claim to prove that the victim was the probable aggressor. MRE 404(a)(2); *People v. Harris*, 458 Mich. 310, 315-316; 583 N.W.2d 680 (1998). However, this type of character evidence may only be admitted in the form of reputation testimony, not by testimony regarding specific instances of conduct unless the testimony regarding those instances is independently admissible for some other reason or where character is an essential element of a claim or defense. MRE 405; *Harris*, 458 Mich. at 318-319.

Maxwell fails entirely to address this rule, or explain how the evidence sought to be admitted, which is clearly not reputation evidence, would meet any exception to the general rule stated above. This Court has no duty to rationalize Maxwell's claims or elaborate on his arguments for him. *People v. Waclawski*, 286 Mich. App. 634, 679; 780 N.W.2d 321 (2009). Further, as our Supreme Court explained in *Harris*, because such evidence is relevant to the question of the killer's state of mind, "it is obvious that the victim's character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is irrelevant." *Harris*, 458 Mich. at 317. Even if the rule of *Orlewicz* was satisfied, Maxwell fails to point to any evidence that he was aware of Delaney's recent release and parole status at the time of the murder, and thus, fails to demonstrate relevancy. On the whole, we cannot conclude that the trial court abused its discretion by refusing to admit evidence concerning Delaney's recent release from prison and his parole status.[5]

---

[5]Maxwell also argues that the evidence could have helped rebut an argument by the prosecutor to the effect that Delaney had never taken the children from Solomon in the past. Maxwell explains that this argument was misleading because Delaney was in

To the extent Maxwell argues that the trial court's evidentiary ruling violated his right to cross-examine witnesses, his argument is clearly without merit. The right to cross-examine witnesses does not encompass a right to cross-examine a witness regarding irrelevant issues. *People v. Gaines*, 306 Mich. App. 289, 316; 856 N.W.2d 222 (2014). And to the extent Maxwell believes he was denied the right to present a defense, he was not. As explained, the evidence was simply not relevant to Maxwell's defense. Further, while criminal defendants have the constitutional right to present a defense, they must still comply with the rules of evidence. *People v. King*, 297 Mich. App. 465, 473-474; 824 N.W.2d 258 (2012). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id*. at 474 (quotation marks and citations omitted). Maxwell fails to explain how the rules regarding the inadmissibility of irrelevant evidence, or the definition of irrelevant evidence, are arbitrary or disproportionate.

*Maxwell*, 2018 WL 6184913 at *5-6 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner asserts that the trial court erred as a matter of Michigan evidentiary law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

─────────────────

prison, and thus, could not have taken the children. The trial court did allow the parties to introduce evidence that Delaney had been absent for a period; it did not allow evidence of the reason for that absence. The crucial fact with regard to Maxwell's point is not that Delaney was in prison, but that he was absent and thus did not have the opportunity to take the children. This point could be made from the evidence allowed at trial.

19

Second, Petitioner fails to show that the trial court's evidentiary ruling was fundamentally unfair or deprived him of the right to present a meaningful defense. As discussed by the Michigan Court of Appeals, the trial court reasonably determined that evidence of the victim's incarceration and recent release from prison was neither relevant nor admissible under state law. Moreover, Petitioner was not deprived of the opportunity to present a meaningful defense. He was able to present testimony describing the victim's assaultive behavior just prior to the shooting, evidence of the victim's prior domestic violence convictions involving Solomon, and testimony from Solomon's mother about Solomon's and the victim's turbulent relationship and the abuse that Solomon experienced in support of his defense of others claim. Petitioner fails to establish that the trial court deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The Court concludes that Petitioner fails to make a substantial showing of the

denial of a constitutional right as to his claims.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith.  *See* Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.  This case is **CLOSED**.

**IT IS SO ORDERED**.



s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:  May 3, 2022